MICHAEL J. ENRIGHT v. GEORGE DUFF ET AL., POLICE
COMMISSIONERS OF THE CITY OF PORT HURON.

*Municipal corporations—Removal of police—Authority of com-
missioners.*

By the amended charter of the city of Port Huron (Act No. 392,
Local Acts of 1893), the police force, which had been under
the control of the common council, and the members of which
were not subject to removal until charges had been preferred
against them, and they afforded an opportunity of being heard
in their defense, was placed under the control and manage-
ment of a commission created by the act, with exclusive power
to appoint members of the force, and to suspend or remove
policemen under and for such causes as should be fixed by
the ordinances and charter of the city and the rules adopted
by the commission. It was further provided that the existing
police force should continue to hold their offices until their
successors should be appointed and qualified. And it is held
that the members of the police force had no fixed tenure of
office at the time of the enactment of said statute; that its
evident purpose ,was to confer upon the commission authority
to reorganize the force; and that a policeman who received
his appointment under the earlier law cannot complain of his
removal by the commission for his alleged physical incompe-
tency, on the ground that charges were not preferred against
him, and the question of his physical incapacity tried and
determined by said commissioners.

*Certiorari* to St. Clair.     (Vance, J.)     Argued October
2, 1894.   Decided November 20, 1894.

Relator applied to the circuit court for *mandamus* to
compel respondents to reinstate him as a member of the
police force.   Respondents bring *certiorari* to review order
granting the writ.   Reversed.   The facts are stated in the
opinion.

*Northup & O'Donnell,* for relator.

*Phillips & Jenks,* for respondents.

MONTGOMERY, J.    This is *certiorari* to review the decision of the circuit judge granting a *mandamus* to compel the reinstatement of the relator as a member of the police force of the city of Port Huron.

It appears by the return that the police commissioners removed the relator after having caused a physical examination to be made, and having apparently satisfied themselves that the relator was physically incompetent. No charge was brought against the relator of any misconduct, nor is any now suggested. His contention is that he was entitled to have charges regularly preferred against him, and the question of his physical incapacity tried and determined by the board of commissioners, before they were justified in causing his removal.

Prior to 1893 the control of the police was in the common council of the city, and an ordinance had been adopted which provided, by section 6, that—

" No policeman shall be removed until charges shall have been preferred against him, and he afforded an opportunity of being heard in his defense. But pending the hearing of such charges, the chief of police may suspend such member from duty."

It is contended by the police commission—First, that this ordinance, if it be deemed in force, should not be construed to have application to cases of removals for physical incapacity,—that the word " charges" implies something more than a determination of physical incapacity for the service; and, second, that, under the amendment to the laws hereinafter noted, the power to reorganize the police force and to displace the incumbents was conferred upon the police commission when organized, and that those holding under earlier appointment could, upon the reorganization, be displaced by the appointment of successors. If this contention be sound, it becomes unnecessary to

determine what would have been the relator's right under the earlier law.

The provisions of the amended charter are found in Act No. 392, Local Acts of 1893.    At page 1165, section 48 provides that—

" The police force of the city of Port Huron, as now organized, shall be under the control and management of a police commission hereby created."

After providing for the constitution of the commission, it is further enacted as follows:

" Said commission shall, within 60 days after the passage of this act, and on the first Monday of June in each year thereafter, appoint a chief of police, who shall be *ex officio* marshal of said city, and perform all the duties to be performed by the marshal under the charter and ordinances of said city.  Said commission shall have the exclusive power to appoint members of the police force, to suspend or remove the chief of police or policemen under and for such causes as shall be fixed by the ordinances and charter of said city and the rules adopted by said commission."

Further:

" Said commissioners shall serve without compensation, and the city clerk shall be *ex officio* clerk of said commission:  *Provided*, that the chief of police or any policeman shall not be appointed or removed except by a vote of the majority of the members of said commission:  *And Provided, further*, that the present police force, including the chief, shall continue to hold their respective offices until their successors are appointed and qualified."

We think that by these provisions it was intended to confer upon the commission power to reorganize the police force in the first instance.    The commission is given exclusive power to appoint members of the police force.    It is further provided that the present police force, including the chief, shall continue to hold their respective offices until their successors are appointed and qualified.    This

provision is certainly not apt to express an intent that successors shall only be appointed to the members of the force after the incumbents have been tried for offenses or incompetency, and dismissed from the service. The members of the force had no fixed tenure at the time of the enactment of this statute, and the evident purpose was to confer upon the new commission the authority to reorganize the force. The relator is not an appointee of the present commission, but derives his appointment from the common council under the earlier law. This being the case, he was subject to removal, and is not in position to complain of the action of the commission.

The order directing his reinstatement will be reversed.

The other Justices concurred.